**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **FRANK BOOKER, JR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:09cv00759** |
| | ) | |
| **DOMINION VIRGINIA POWER**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF
<u>DOMINION VIRGINIA POWER'S MOTION TO DISMISS</u>**

Virginia Electric and Power Company d/b/a Dominion Virginia Power ("DVP"), by

counsel, states as follows in support of its Motion to Dismiss the Complaint of Frank Booker, Jr.:

<u>**Introduction**</u>

On October 5, 2009, Frank Booker, Jr. ("Booker") filed this action *pro se* in the Circuit

Court of Amelia County, Virginia.  Booker alleged that DVP and TDS Telecommunications

Corporation ("TDS") improperly responded to an administrative subpoena issued by Special

Agent Mark Bertsch ("Bertsch") of the Drug Enforcement Administration.  Regarding DVP,

Booker alleges that he was injured when DVP produced "records relating to power use records

for Booker's real property."  Complaint ¶ 7.  By doing so, Booker claims that DVP negligently

"disseminat[ed] Booker's private information to an unauthorized person" and invaded Booker's

privacy by publicly disclosing Booker's private business affairs with DVP.  *Id.* ¶¶ 13, 16, 22.   In

addition to general and punitive damages, Booker seeks a declaratory judgment that DVP did not

have the authority to respond to the subpoena because it was "faxed" to DVP and that DVP

violated Booker's right of privacy.  *Id.* ¶ 24.

On November 6, 2009, DVP filed a Demurrer[1] and Motion Craving Oyer, the claims of which are incorporated herein by reference.  On December 1, 2009, Bertsch, in his official capacity, removed this case to this Court pursuant to 28 U.S.C. §§ 1442(a), 1441(a) and 2679.  DVP's Demurrer and Motion Craving Oyer were filed with the notice of removal.  As discussed below, Booker failed to state a claim or cause of action against DVP, failed to state sufficient facts to support a claim for punitive damages, and failed to demonstrate that he has standing to bring an action for the declaratory judgment he seeks.  As such, his Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) regarding DVP.

## Facts

Booker lives at 13015 Five Forks Road, Amelia, Virginia.  His neighbor, Benjamin Thompkins, lived at 13011 Five Forks Road, Amelia, Virginia.  Thompkins was apparently the subject of an investigation by the Drug Enforcement Administration ("DEA") and a subsequent Grand Jury investigation in this Court regarding his alleged production and sale of marijuana.  As part of the DEA's investigation, Bertsch issued an administrative subpoena to DVP for the power use records of 13011 Five Forks Road and for two other residences in the vicinity of 13011 Five Forks Road.  *See* Affidavit in Support of Search Warrant, attached as Exhibit A.[2]  Apparently, the DEA sought to prove that the power usage for 13011 Five Forks Road was excessive and grossly out of portion to other similarly situated residences, such as Booker's, and was consistent with an indoor marijuana cultivation operation.  *See* Ex. A.

[1] A demurrer in state court is akin to the Federal Rule 12(b)(6) motion to dismiss.  A demurrer tests whether the plaintiff's complaint states a cause of action upon which relief can be granted.  *See* Va. Code Ann. § 8.01-273(A).
[2] Booker attached a copy of the Affidavit attached as Exhibit A as his Exhibit B to Booker's Reply to Demurrer of Virginia Electric and Power Company d/b/a Dominion Virginia Power & Request for Order Dismissing TDS, which was filed in the Circuit Court for Amelia County, on December 10, 2009, after this matter had been removed to the Eastern District of Virginia.

DVP received the subpoena and responded by providing Bertsch with Thompkins's and Booker's power usage records.   Bertsch cited the disparity in power usage between Thompkins's residence and Booker's residence in an Affidavit in Support of Search Warrant to search Thompkins's residence.  The Court authorized a search of Thompkins's residence on June 23, 2008.  *See* Search Warrant,[3] attached as <u>Exhibit B</u>.   Because Grand Jury proceedings are secret, DVP has no idea whether the records were used in those proceedings, and if so how.

Thompkins was subsequently indicted and on November 20, 2008, at the conclusion of his jury trial, he was convicted of manufacturing and possession with intention to distribute marijuana, possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm and ammunition by a convicted felon.  According to the transcript of the proceedings, Booker's power usage records were neither referenced nor introduced as evidence during Thompkins's trial.  After the trial, and after the jury was dismissed, Thompkins's attorney proffered for the record Bertsch's testimony as to what the administrative subpoena he issued to DVP sought, and what it obtained.

DVP was not a witness at the trial and knew nothing about it.  DVP heard nothing from Booker until he filed suit.

## <u>Argument</u>

To survive a motion to Dismiss under Rule 12(b)(6), Booker is required to provide in his Complaint the grounds of "entitle[ment] to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

---

[3] Booker attached a copy of the Search Warrant attached as Exhibit B as his Exhibit C to Booker's Reply to Demurrer of Virginia Electric and Power Company d/b/a Dominion Virginia Power & Request for Order Dismissing TDS, which was filed in the Circuit Court for Amelia County, on December 10, 2009, after this matter had been removed to the Eastern District of Virginia.

Booker fails to meet this threshold.  He fails to allege that DVP breached any cognizable duty owed toward him or that he had a legitimate expectation of privacy in DVP's power usage records.  Moreover, Booker lacks standing to bring an action for the declaratory judgment he seeks, and he fails to state a claim for punitive damages against DVP.

**A.      Booker's Complaint Fails to State a Claim for Invasion of Privacy.**

      1.      <u>Booker does not make a proper privacy claim</u>.

Booker claims that DVP invaded his privacy by "transmit[ting] information about Booker to a location where a bevy of people reviewed Booker's private records."  Complaint ¶ 22.  As noted by the Virginia Supreme Court, the common law recognized four different torts of invasion of privacy:

> (1) unreasonable intrusion upon the Booker's seclusion, or solitude, or into his private affairs; (2) public disclosure of true, embarrassing private facts about the Booker; (3) publicity which places the Booker in a false light in the public eye; and (4) misappropriation of Booker's name or likeness for commercial purposes.

*WJLA-TV v. Levin*, 564 S.E.2d 383, 395 n. 5 (2002) (citing William L. Prosser, *The Law of Torts* § 117 (4th ed. 1971)).  The Virginia General Assembly, however, codified only the last of these torts in Virginia Code § 8.01-40.  In so doing, "the General Assembly has implicitly excluded the remaining three as actionable torts in Virginia."  *Id.* (citing *Falwell v. Penthouse*, 521 F. Supp. 1204, 1206 (W.D. Va. 1981)).  Booker fails to allege that DVP violated Section 8.10-40.  Accordingly, to the extent that Booker claims that DVP invaded his privacy by transmitting his utility records to "a bevy of people," Complaint ¶ 22, Booker fails to state a proper cause of action.  <u>See</u> <u>Wiest v. E-Fense, Inc.</u>, 356 F. Supp. 2d 604, 610-12 (E.D. Va. 2005) (dismissing a plaintiff's claim for common law invasion of privacy because "no such action exists under Virginia law").

2.      <u>Booker lacks standing to bring this claim</u>.

Booker lacks standing to challenge DVP's response to the administrative subpoena and fails to demonstrate that he had a reasonable expectation of privacy in the power usage records produced by DVP.  The administrative subpoena at issue, attached hereto as <u>Exhibit C</u>,[4] was served on DVP by Bertsch pursuant to 21 U.S.C. § 876.  Section 876 authorizes the United States Attorney General or his designee to issue a subpoena for the production of "any records . . . which the Attorney General finds relevant or material" to the investigation relating to a Federal controlled substance offense.   The Attorney General's authority may be delegated to special agents in charge of those criminal investigations covered by the statute.  *See* 28 C.F.R. § 0.100, Subpart R (delegating the Attorney General's functions vested in him by the Controlled Substances Act, including issuance of subpoenas pursuant to 21 U.S.C. § 876 to the DEA Administrator); 28 C.F.R. § 0.100, Appendix to Subpart R (re-delegating the DEA Administrator's authority to issue administrative subpoenas to DEA personnel, including Special Agents in Charge, Associate Agents in Charge, Resident Agents in Charge, and Diversion Program Managers); *see also U.S. v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993) (noting that "[t]he Attorney General may delegate this power to special agents in charge of those criminal investigations covered by the statute").

Thus, DVP produced Booker's power usage records in response to an authorized administrative subpoena.  To the extent that Booker seeks to assert a claim against DVP for accepting service of the subpoena by fax, the right to insist on service by a particular means is a right personal to DVP and one that Booker lacks standing to assert or challenge.

---

[4] As noted in DVP's Motion Craving Oyer, Booker's Complaint does not include the administrative subpoena or the records produced in response to it.  Although Booker bears the burden of proving these documents on which he has sued, DVP has produced a true copy of the administrative subpoena in the interest in expediting the matter.  *See* Exhibit C.

Similarly, Booker lacks standing to assert or challenge DVP's substantive response to the administrative subpoena. "Because a subpoena duces tecum leads to the *compulsory* production of private papers, a person served with a subpoena *duces tecum* is entitled to the Fourth Amendment's protection against unreasonableness." *In Re: Subpoena Duces Tecum*, 228 F.3d 341, 347 (4th Cir. 2000) (emphasis in original) (internal quotation omitted). A subpoena . . . commences an adversary process during which *the person served with the subpoena* may challenge it in court before complying with its demands." *Id*. at 348 (emphasis added).

Without standing to challenge the administrative subpoena, Booker "must show not only that he suffered actual personal injury traceable to the challenged action but that he is in the zone of interest the statute is meant to protect." *U.S. v. Moffett*, 84 F.3d 1291, 1293 (10th Cir. 1996). Title 21 U.S.C. § 876 "was written to give the DEA broad powers to investigate violations of federal drug laws. The statute provides no express right to challenge the Attorney General's subpoenas issued under it." *Id*. at 1293-94. *Cf.* 26 U.S.C. § 7609 (requiring notice and giving a right to intervene to person whose business records are subpoenaed by the IRS). Consequently, Booker is not within the zone of interest the statute is meant to protect, and he does not have standing to dispute the subpoena's issuance, unless he can demonstrate that he had a legitimate expectation of privacy attaching to the records obtained pursuant to the subpoena. *Phibbs*, 999 F.2d at 1077.

Booker clearly did not have either an actual or justifiable privacy interest in records pertaining to his "private business affairs with Defendant Dominion." Complaint ¶ 13. DVP's records produced in response to the subpoena, attached as <u>Exhibit D</u>,[5] were not records over

---

[5] Booker attached the records attached as Exhibit D as his Exhibit A to Booker's Reply to Demurrer of Virginia Electric and Power Company d/b/a Dominion Virginia Power & Request for Order Dismissing TDS, which was filed in the Circuit Court for Amelia County, on December 10, 2009, after this matter had been removed to the Eastern District of Virginia.

which Booker could claim ownership or possession.  They were DVP's business records.  The

information contained within these records was readily accessible to employees during the

normal course of business.  *See U.S. v. Miller*, 425 U.S. 435 (1976) (bank customer had no

reasonable expectation of privacy that society was prepared to recognize in copies of financial

statements which he had voluntarily turned over to a bank); *Phibbs*, 999 F.2d at 1078 (defendant

had no justifiable privacy interest in his credit card statements and telephone records that were

produced to the DEA pursuant to administrative subpoena, inasmuch as the statements and

records were business records).

Further, the majority of jurisdictions to have considered the issue have concluded that

utility records do not contain information in which individuals possess a reasonable expectation

of privacy.  *See Samson v. State*, 919 P.2d 171 (Alaska Ct. App. 1996) (finding no reasonable

expectation of privacy in power consumption utility records); *People v. Dunkin*, 888 P.2d 305

(Colo. Ct. App. 1994) (same); *State v. Kluss*, 867 P.2d 247 (Idaho App. 1993) (same); *see also*

*State v. Chryst*, 793 P.2d 538 (Alaska Ct. App. 1990) (stating that an electric utility customer

does not have a reasonable expectation of privacy in his address information given to a company

for the purpose of obtaining service and noting that the information "was available because

Chryst was a consumer of a public utility.  Few people would regard the fact that they are

consumers of the services of a public utility to be private information.").

Notably, the Courts of Appeals of Alaska, Colorado, and Idaho interpreted their State's

constitution to provide more protection to the right to privacy than is provided under the federal

constitution, yet they still concluded that society was not prepared to recognize a reasonable

expectation of privacy in utility records.  *Samson*, 919 P.2d at 173; *Dunkin*, 888 P.2d at 307-08;

*Kluss*, 867 P.2d at 252-54.  As the Court of Appeals of Idaho held:

> In order to have electricity, Kluss was obliged to obtain the same from [his utility company]. Kluss did nothing to create the records except consume power. The power records in the case at bar reveal only the amount of power usage. The power records were maintained by [the utility company] in the ordinary course of business. They do not identify any activities of Kluss. On a comparative basis they may demonstrate that the power use at the Kluss home is greater or lesser than similar houses or at similar times or that the power use has increased or decreased at different times. The information does not provide any intimate details of Kluss's life, identify his friends or political and business associates, nor does it provide or complete a "virtual current biography." The power records, unlike telephone or bank records, do not reveal discrete information about Kluss's activities. High power usage may be caused by any one of numerous factors: hot tubs, arc welders, poor insulation, ceramic or potter kilns, or indoor gardening under artificial lights.

*Kluss*, 867 P.2d at 254.

**B.      Booker fails to allege a claim of negligence against DVP.**

Booker alleges that DVP "had a duty to Booker to act with reasonable care in providing reasonably safe keeping of Booker's private power records, and particularly by not disseminating Booker's private information to an unauthorized person." Complaint ¶ 16. However, as discussed above, Bertsch was authorized to subpoena and receive Booker's utility records, pursuant to 21 U.S.C. § 876 and related regulations. As held by the Fourth Circuit, an administrative subpoena "leads to the *compulsory* production of private papers." *In Re: Subpoena Duces Tecum*, 228 F.3d at 347 (emphasis in original). As such, the federal subpoena *compelled* DVP to produce Booker's power usage records. Neither Virginia common or statutory law impose on DVP a duty to refuse to comply with a validly issued administrative subpoena. Accordingly, Booker fails to state a claim that DVP negligently produced Booker's power usage records in response to Bertsch's administrative subpoena.

**C.      Booker lacks standing to seek a declaratory judgment.**

Booker seeks a declaratory judgment declaring that DVP "did not have the authority to fulfill a 'faxed' subpoena" and "did violate Booker's right of privacy when they unlawfully

furnished Booker's private records to Agent Mark Bertsch." Complaint ¶ 24. The Declaratory

Judgment Act, codified at 28 U.S.C. § 2201, provides that in "a case of *actual controversy* within

its jurisdiction. . . any court of the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought." *Id.* (emphasis added). To establish such a

controversy, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly

unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S.

737, 751 (1984). In other words, Booker must allege three requirements: personal injury,

causation, and redressability. *See Comite De Apoyo a Los Trabajadores Agricolas v. U.S. Dep't

of Labor*, 995 F.2d 510, 513 (4th Cir.1993).

Booker's request for a declaration that DVP did not have the authority to "fulfill a 'faxed'

subpoena" fails because the right to insist on service by a particular means is a right personal to

DVP. Booker's claim for a declaration that DVP violated Booker's right to privacy when it

furnished Booker's power usage records to Bertsch fails because Virginia does not recognize

such a claim. Moreover, Booker cannot show that he had a reasonable expectation of privacy in

his power usage records.

Booker also fails to articulate how the declaratory relief will redress his alleged injuries.

As the Fourth Circuit noted, "[b]y itself, a declaratory judgment cannot be the redress that

satisfies the third standing prong. Rather, plaintiffs must identify some further concrete relief

that will likely result from the declaratory judgment. Otherwise plaintiffs with mooted claims of

injury could gain federal jurisdiction simply by demanding declaratory relief." *Comite De Apoyo

a Los Trabajadores Agricolas*, 995 F.2d at 513. Accordingly, Booker lacks standing to bring his

claim for a declaratory judgment.

**D.      Booker fails to state a claim for punitive damages against DVP.**

Booker alleges that "[t]he conduct, acts, and omissions of defendants and each of them alleged herein were in part intentional and in part evinced a reckless and callous disregard for Booker's interest, were consciously malicious or negligent, and displayed a conscious or unconscious disregard for the unjustifiable substantial risk of harm to Booker."  Complaint ¶ 28. In a lawsuit such as Booker's, "where state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law."  *Mosser v. Fruehauf Corp.*, 940 F.2d 77, 84 (4th Cir. 1991) (quoting *Browning-Ferris Industries, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989)).

Virginia law holds that "[p]unitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others."  *Xspedius Mgmt. Co. of Va., L.L.C. v. Stephan*, 611 S.E.2d 385, 387 (Va. 2005) (quoting *Giant of Virginia, Inc. v. Pigg*, 152 S.E.2d 271, 277 (Va. 1967)).  "The purpose of punitive damages is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others."  *Id.* (internal quotation omitted).  "Accordingly, punitive damages are generally not favored and should be awarded only in cases involving the most egregious conduct."  *Id.* (internal quotation omitted).  "Where the act or omission complained of is free from fraud, malice, oppression, or other special motives of aggravation, damages by way of punishment cannot be awarded, and compensatory damages only are permissible."  *Id.* (quotations omitted).

Booker's Complaint is devoid of any allegations of "fraud, malice, oppression, or other special motives of aggravation."  Instead, his claims are premised entirely on DVP providing the

Drug Enforcement Administration with records relating to Booker's power usage in response to an administrative subpoena.  Booker fails to allege any facts demonstrating that DVP breached any duty owed to him or that he had a legitimate expectation of privacy regarding his power usage records.  Booker's allegations against DVP do not remotely approach "the most egregious conduct" that punitive damages are intended to deter.  For these reasons, Booker fails to state a claim for punitive damages against DVP.

## <u>Conclusion</u>

For the foregoing reasons, Virginia Electric and Power Company, d/b/a Dominion Virginia Power, respectfully moves this Court to enter an Order dismissing with prejudice Booker's Complaint in this matter and granting such other relief that the Court may deem necessary or appropriate.

Respectfully submitted,

_____/s/_____
Jennifer L. Morris

Andrew G. Mauck, VSB No. 35177
Jennifer L. Morris, VSB No. 75214
Setliff Turner & Holland, P.C.
4940 Dominion Boulevard
Glen Allen, VA 23060-6766
(804) 377-1260
(804) 377-1280 (fax)
jmorris@sthlawyers.com

*Attorneys for*
*Virginia Electric and Power Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 30, 2009, I electronically filed the foregoing **MOTION TO DISMISS OF DEFENDANT VIRGINIA ELECTRIC AND POWER COMPANY D/B/A DOMINION VIRGINIA POWER** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> W. Jeffery Edwards, Esq.
> William H. Wright, Jr.
> Hunton & Williams, LLP
> Riverfront Plaza, East Tower
> 951 East Byrd Street
> Richmond, Virginia 23219-4074

> > *Counsel to Defendant TDS Telecommunications Corporation*

> Robin Perrin, Esq.
> Assistant United States Attorney
> Office of the United States Attorney
> 600 East Main Street, Suite 1800
> Richmond, Virginia 23219

> > *Counsel for Defendants Mark Bertsch and the United States.*

I also certify that on December 230, 2009, a copy of the foregoing **MOTION TO DISMISS OF DEFENDANT VIRGINIA ELECTRIC AND POWER COMPANY D/B/A DOMINION VIRGINIA POWER** was sent via U.S. mail, postage prepaid to:

> Mr. Frank Booker, Jr.
> 13015 Five Forks Road
> Amelia, Virginia 23002

> > *Booker*

_____/s/_____

Jennifer L. Morris

Andrew G. Mauck, VSB No. 35177
Jennifer L. Morris, VSB No. 75214
Setliff Turner & Holland, P.C.
4940 Dominion Boulevard
Glen Allen, VA 23060-6766
(804) 377-1260
(804) 377-1280 (fax)
jmorris@sthlawyers.com

***Attorneys for***
***Virginia Electric and Power Company***