IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

FRANK BOOKER, JR.,

    Plaintiff,

v.

DOMINION VIRGINIA POWER, *et al.*,

    Defendants.

Civil Action Number 3:09cv759

## **MEMORANDUM OPINION**

This matter is before the Court on the motions to dismiss filed by Defendants TDS Telecommunications Corporation ("TDS") (Docket Nos. 3 & 7), Dominion Virginia Power ("Dominion") (Docket No. 5), and the United States of America ("United States") and Special Agent Mark Bertsch ("Bertsch") of the Drug Enforcement Administration (DEA) (collectively referred to as "Government Defendants") (Docket No. 18) (all defendants collectively referred to as "Defendants"). Plaintiff, Frank Booker, Jr. ("Plaintiff" or "Booker") has responded, a hearing was held on March 29, 2010, and these matters are ripe for adjudication.

## **I. INTRODUCTION**

Plaintiff Frank Booker brings this action challenging two administrative subpoenas that were faxed by Bertsch in connection with a hydroponic marijuana investigation. The subpoenas were issued to Defendants TDS and Dominion. At all relevant times, Bertsch was a special agent in the Richmond DEA Division Office. His primary function as a DEA Agent is to investigate controlled substance violations.

In 2008, Bertsch became involved in an investigation of the source of hydroponic marijuana. During the investigation, Bertsch learned that a telephone call had been made to a local hydroponics

supplier to inquire about prices for certain products that are used to cultivate marijuana. *See* Affidavit in Support of Search Warrant ¶ 6 (attached as Exhibit A to the Government Defendants' motion to dismiss and memorandum in support and as Exhibit A to Dominion's memorandum in support of its motion to dismiss, hereinafter "Aff.").[1] Based on this and other information, on or about May 28, 2008, Bertsch's Group Supervisor signed an administrative subpoena directed to TDS requesting customer information regarding the telephone number that was used to inquire about the marijuana cultivation products. *See* TDS Subpoena (attached as Exhibit A to TDS's memorandum in support of its motion to dismiss and as Exhibit B to the Government Defendants' motion to dismiss and memorandum in support, hereinafter "the TDS Supoena"). Bertsch transmitted the TDS Subpoena to TDS by facsimile. Complaint ¶ 6. On May 29, 2008, TDS responded that the telephone number was assigned to Booker at 13011 Five Forks Road, Amelia, Virginia. Aff. ¶ 8. Bertsch subsequently learned that Benjamin Thompkins ("Thompkins"), not Booker, lived at 13011 Five Forks Road. However, Booker is Benjamin Thompkins's stepfather, and he lives nearby at 13015 Five Forks Road, Amelia, Virginia. Aff. ¶¶ 9-10.

---

[1]As the Court recognized in its Order of February 4, 2010 (Docket No. 12), the Affidavit in Support of Search Warrant was previously attached to one of Plaintiff's pleadings and is integral to the Complaint. It does not convert the motion to dismiss into a motion for summary judgment. The same is true for the other exhibits attached to Defendants' motions and memoranda. A court may consider documents attached to a complaint or documents that are integral to the complaint and authentic without converting a motion to dismiss into a motion for summary judgment.

> In reviewing the dismissal of a complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record. *Hall v. Virginia,* 385 F.3d 421, 424 (4th Cir. 2004) (citing *Papasan v. Allain,* 478 U.S. 265, 268 n.1 (1986)). We may consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic. *See Blankenship v. Manchin,* 471 F.3d 523, 526 n.1 (4th Cir. 2006).

*Secretary of State For Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007).

Because he was aware that significant energy is required to power grow lights, air-conditioners, water pumps and other electrical power equipment required to cultivate marijuana, Aff. ¶ 12, on or about May 30, 2008, Bertsch's DEA Group Supervisor signed an administrative subpoena directed to Dominion requesting that the following information be provided to Bertsch: "any and all information about the subscriber, and bills for the most recent 12 months for; 13011 Five Forks Road, Amelia, Virginia 23002-2928 . . . [a]nd any other two residences in the vicinity of 13011 Five Forks Road, Amelia, Virginia 23002-2928." *See* Dominion Subpoena (attached as Exhibit C to Government Defendants' motion to dismiss and memorandum in support, hereinafter "the Dominion Subpoena"). Bertsch sent the Dominion Subpoena to Dominion by facsimile. Complaint ¶ 6. On or about June 5, 2008, Dominion provided the information requested in the Dominion Subpoena. Because Booker lived at 13015 Five Forks Road, near his stepson, his residence happened to be one of the two residences "in the vicinity of 13011 Five Forks Road" chosen by Dominion in response to the Dominion Subpoena, so Booker's power records were also included in Dominion's response. The information received from Dominion indicated that the power usage for 13011 Five Forks Road over the prior six billing periods was substantially higher than that of the other nearby homes, including Booker's home. Such usage was consistent with the indoor cultivation of marijuana. Aff. ¶ 12.

A search warrant was later issued for Thompkins' residence, and Thompkins was arrested and charged with violating several federal drug and firearms laws. On July 22, 2008, Thompkins was indicted on four counts: (1) Possession with Intent to Distribute 50 Grams or More of Cocaine Base; (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime; (3) Possession of a Firearm and Ammunition by a Convicted Felon; and (4) Manufacture and Possess with the Intent to Distribute Marijuana. On November 20, 2008, a jury found Thompkins guilty on all four counts. Thompkins was sentenced to a total term of 300 months consisting of 240 months on Count One,

60 months on Count Two to be served consecutively, and 120 months on each of Counts Three and Four, to be served concurrently. Thompkins noted an appeal, and on May 6, 2010, the United States Court of Appeals for the Fourth Circuit affirmed Thompkins' convictions. *See* Judgment in a Criminal Case (Case Number 3:08CR339); *United States v. Thompkins*, No. 09-4143, slip. op. at 2 (4th Cir. May 6, 2010) (per curiam).

On May 21, 2009, Booker filed an administrative tort claim with DEA. Booker claimed that Bertsch violated his Fourth Amendment right to privacy when he faxed the Dominion Subpoena to Dominion. The claim did not reference the TDS Subpoena in any way. *See* Administrative Claim (attached as Exhibit E to Government Defendants' motion to dismiss and memorandum in support). Booker's claim was denied on September 16, 2009. Booker thereafter filed the instant Complaint in Amelia Circuit Court against Dominion, TDS, and Bertsch asserting both common law and constitutional tort claims. Booker did not name the United States as a defendant.

On December 1, 2009, the United States filed a notice of substitution with respect to the non-Constitutional claims asserted against Bertsch pursuant to 28 U.S.C. § 2679(d)(2). The United States also removed the case, specifically preserving the defense of improper service pursuant to Federal Rule of Civil Procedure 4(m). On December 10, 2009, after the case was removed, Booker filed a document entitled "Request for Order Dismissing TDS" in the Amelia County Circuit Court and submitted a sketch order. On December 18, 2009, one of the judges of the Amelia County Circuit Court granted a revised version of the sketch order. *See* Order (attached as Exhibit B to TDS's Memorandum in Support of Motion for Entry of Order Dismissing TDS).

In his Complaint, Booker alleges that he "is entitled to recover damages from each defendant on the theories of liability hereinafter enumerated in Counts I through V, and under such other theories of liability as may be appropriate based upon the facts as alleged herein or as revealed during discovery."

4

Count I – Negligence – includes the following allegations: (1) that Dominion had a "duty to Plaintiff to act with reasonable care in providing reasonably safe keeping of Plaintiff's private power records, and particularly by not disseminating Plaintiff's private information to an unauthorized person;" that Dominion "breached such duty, and that "as a proximate result of the conduct of Dominion alleged herein, Plaintiff has been damaged in an amount which Plaintiff will prove;" (2) that TDS had a duty to Plaintiff to act with reasonable care in providing reasonably safe keeping of Plaintiff's private subscriber information and phone records, and particularly by not disseminating Plaintiff's private information to an unauthorized person;" that TDS "breached such duty," and that "as a proximate result of the conduct . . . alleged herein, Plaintiff has been damaged in an amount which Plaintiff will prove;" and (3) that Bertsch had a "duty to Plaintiff to act with reasonable care in respecting Plaintiff's privacy by not unlawfully procuring Plaintiff's power use records, maintained by Dominion, and Plaintiff's personal phone records, maintained by TDS, and particularly by not disseminating Plaintiff's private information to members of the general public;" that Bertsch "breached such duty," and that "as a proximate result of the conduct of . . . Bertsch alleged herein, Plaintiff has been damaged in amount which Plaintiff will prove."

Count II – Invasion of Privacy & Public Disclosure of Private Facts – includes allegations that the defendants invaded the Plaintiff's privacy as follows: "Dominion and TDS electronically transmitted private information about Plaintiff to [a] location where a bevy of people reviewed Plaintiff's private records," and that Bertsch "presented Plaintiff's records to an enormous public crowd in an effort to make it appear to the public that Plaintiff's power use records were an example of why Plaintiff's neighbor Benjamin Thompkins was operating an illegal marijuana cultivation scheme."

Count III – Declaratory Judgment – seeks a declaratory judgment that Dominion and TDS did not have the authority to "fulfill a 'faxed' subpoena" and "did violate Plaintiff's right of privacy

when they unlawfully furnished Plaintiff's private records to Agent Mark Bertsch." Count IV – Deprivation of Civil Rights against Agent Mark Bertsch – alleges that Bertsch violated Plaintiff's Fourth Amendment rights and that he is liable under 42 U.S.C. § 1983. Count V – Punitive Damages – alleges that the conduct was "in part intentional and in part evinced a reckless and callous disregard for Plaintiff's interest," was "consciously malicious or negligent; and displayed a conscious or unconscious disregard for the unjustifiable substantial risk of harm to Plaintiff." Plaintiff seeks $10,000,000 in general and special damages; and punitive damages "in an amount which Plaintiff will prove."

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at ----, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

As a general rule, a Rule 12(b)(6) motion to dismiss for failure to state a claim does not permit the Court to look outside the complaint. *See* Fed. R. Civ. P. 12(d); *Gasner v. County of Dinwiddie*, No. 3:05cv378, 162 F.R.D. 280, 281 (E.D. Va. 1995). As a general rule, if the Court does consider "matters outside the complaint," it must convert the motion into a motion for summary judgment, affording the parties a "reasonable opportunity to present all material made pertinent to such a motion." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). However, as noted previously, a court is permitted to consider matters on the public record in connection with a motion to dismiss without converting the motion to one for summary judgment. *See Papasan*, 478 U.S. at 268 n.1. Additionally, "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment." *Gasner*, 162 F.R.D. at 282. Such documents include "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, No. 05-1378, 164 Fed. Appx. 395, 396 (4th Cir. Jan. 31, 2006) (citing *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) and *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). To that end, the Court will consider the records appended to the Defendants' motions and memoranda, as they include public judicial records on the subject of the Complaint and other documents that are integral to the complaint and authentic.

### III. ANALYSIS

**Dominion Virginia Power**

Dominion argues that Booker's Complaint fails to state a claim for invasion of privacy because he does not make a proper privacy claim and he lacks standing to bring this claim. It argues

that Booker fails to allege a claim of negligence against Dominion, lacks standing to seek a declaratory judgment, and fails to state a claim for punitive damages.

Invasion of Privacy

Dominion correctly notes that the common law recognized four different torts of invasion of privacy: (1) unreasonable intrusion upon the plaintiff's seclusion, or solitude, or into his private affairs; (2) public disclosure of true, embarrassing private facts about the plaintiff; (3) publicity that places the plaintiff in a false light in the public eye; and (4) misappropriation of the plaintiff's name or likeness for commercial purposes. *WJLA-TV v. Levin*, 564 S.E.2d 383, 395 n. 5 (2002) (citing William L. Prosser, *The Law of Torts* § 117 (4th ed. 1971)). The Virginia General Assembly, however, codified only the last of these torts in Virginia Code § 8.01-40. In so doing, "the General Assembly has implicitly excluded the remaining three as actionable torts in Virginia." *Id.* (citing *Falwell v. Penthouse*, 521 F. Supp. 1204, 1206 (W.D. Va. 1981) (interpreting Virginia law)). Booker does not allege that Dominion or any of the Defendants violated Section 8.10-40. Accordingly, to the extent that Booker claims that Dominion or the other Defendants invaded his privacy by transmitting his utility records to a large group of people, Booker fails to state a proper claim. *See Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 610-12 (E.D. Va. 2005) (dismissing a plaintiff's claim for common law invasion of privacy because "no such action exists under Virginia law").

Booker also lacks standing to challenge Dominion's response to the administrative subpoena. The Dominion Subpoena was served on Dominion pursuant to 21 U.S.C. § 876, which authorizes the United States Attorney General or his designee to issue a subpoena for the production of "any records . . . which the Attorney General finds relevant or material" to the investigation relating to a Federal controlled substance offense. The Attorney General may delegate his authority to special agents in charge of those criminal investigations. *See* 28 C.F.R. § 0.100, Subpart R (delegating the

Attorney General's functions vested in him by the Controlled Substances Act, including the issuance of subpoenas pursuant to 21 U.S.C. § 876 to the DEA Administrator); 28 C.F.R. § 0.100, Appendix to Subpart R (re-delegating the DEA Administrator's authority to issue administrative subpoenas to DEA personnel, including Special Agents in Charge, Associate Agents in Charge, Resident Agents in Charge, and Diversion Program Managers); *see also United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993) (noting that "[t]he Attorney General may delegate this power to special agents in charge of those criminal investigations covered by the statute"). Thus, Dominion produced Booker's power usage records in response to an authorized administrative subpoena.[2]

To the extent Booker seeks to assert a claim against Dominion , or TDS, for accepting service of the subpoena by facsimile, the right to insist on service by a particular means is a right personal to Dominion that Booker lacks standing to challenge. Further, Booker also lacks standing to challenge Dominion's or TDS's substantive response to the Administrative Subpoena. Booker would have to show "not only that he suffered actual personal injury traceable to the challenged action but that he is in the zone of interest the statute is meant to protect." *United States v. Moffett,* 84 F.3d 1291, 1293 (10th Cir. 1996). Title 21 U.S.C. § 876 "was written to give the DEA broad powers to investigate violations of federal drug laws" and it "provides no express right to challenge the Attorney General's subpoenas issued under it." *Id.* at 1293-94. This contrasts with Title 26 U.S.C. § 7609 which requires notice and gives a right to intervene to a person whose business records are subpoenaed by the IRS. Thus, Booker is not within the zone of interest the statute is meant to protect, and he does not have standing to dispute the subpoena's issuance, unless he can demonstrate that he had a legitimate expectation of privacy attaching to the records obtained

---

[2] Administrative subpoenas issued under 21 U.S.C. § 876 by an authorized DEA employee may seek telephone and power records. *See Phibbs,* 999 F.2d at 1076-77 (telephone records); *United States v. Domitrovich*, 852 F. Supp. 1460, 1462 n.2 (E.D. Wash. 1994) (public utility records).

pursuant to the subpoena. *Phibbs*, 999 F.2d at 1077; *Moffett*, 84 F.3d at 1293. Thus, there is no express or implied private right of action to challenge administrative subpoenas under 21 U.S.C. § 876.

Further, Booker did not have an actual or justifiable privacy interest in records related to his "private business affairs with Defendant Dominion." The records produced in response to the subpoena were Dominion's business records. They were not records over which Booker could claim ownership or possession. *See Phibbs*, 999 F.2d at 1078 (defendant had no justifiable privacy interest in his credit card statements and telephone records that were produced to the DEA pursuant to administrative subpoena, as the statements and records were business records.). Moreover, utility records do not contain information in which individuals possess a reasonable expectation of privacy. S*ee United States v. Hamilton*, 434 F. Supp. 2d 974, 979-80 (D. Or. 2006) (finding no legitimate expectation of privacy in power records); *Samson v. State*, 919 P.2d 171, 173 (Alaska Ct. App. 1996) (finding no reasonable expectation of privacy in power consumption utility records); *People v. Dunkin*, 888 P.2d 305, 308 (Colo. Ct. App. 1994) (same); *State v. Kluss*, 867 P.2d 247, 254 (Idaho App. 1993) (noting that the records were maintained by the utility company in the ordinary course of business, that they do not identify any activities of the defendant, and finding no reasonable expectation of privacy in power consumption records); *State v. Chryst*, 793 P.2d 538, 542 (Alaska Ct. App. 1990) (stating that an electric utility customer does not have a reasonable expectation of privacy in his address information given to a company for the purpose of obtaining service and noting that the information "was available because Chryst was a consumer of a public utility [and] [f]ew people would regard the fact that they are consumers of the services of a public utility to be private information."). For theses reasons, Booker fails to state a claim for invasion of privacy against Dominion, and this claim will be dismissed.

Negligence

Booker alleges that Dominion "had a duty to Booker to act with reasonable care in providing reasonable safe keeping of Booker's private power records, and particularly by not disseminating Booker's private information to an unauthorized person." Complaint ¶ 16. However, as discussed previously, Bertsch was authorized to subpoena and to receive Booker's utility records, pursuant to 21 U.S.C. § 876 and the related regulations. An administrative subpoena "leads to the *compulsory* production of private papers." *In Re: Subpoena Duces Tecum*, 228 F.3d 341, 347 (4th Cir. 2000) (emphasis in original). Thus, the Dominion Subpoena *compelled* Dominion to produce Booker's power usage records. Neither Virginia common law nor Virginia statutory law imposes on Dominion a duty to refuse to comply with a validly issued administrative subpoena. For these reasons, Booker fails to state a claim that Dominion negligently produced Booker's power usage records in response to Bertsch's administrative subpoena.

Declaratory Judgment

Booker seeks a declaratory judgment that Dominion "did not have the authority to fulfill a 'faxed' subpoena" and "did violate Booker's right of privacy when they unlawfully furnished Booker's private records to Agent Mark Bertsch." Complaint ¶ 24. However, for the following reasons, Booker lacks standing to seek a declaratory judgment. The request for a declaration that Dominion did not have the authority to "fulfill a 'faxed' subpoena" fails for several reasons, several of which have already been discussed. First, it fails because the right to insist on service by a particular means is a right personal to Dominion, not Booker. His request for a declaration that Dominion violated Booker's right to privacy when it furnished Booker's power usage records to Bertsch also fails because Virginia does not recognize such a claim. Further, Booker cannot show that he had a reasonable expectation of privacy in his power usage records. In addition, Booker also fails to meet the three requirements for declaratory relief – personal injury, causation, and

11

redressability. *See Comite De Apoyo a Los Trabajadores Agricolas v. U. S. Dep't of Labor*, 995 F.2d 510, 513 (4th Cir. 1993). For these reasons, his claim for a declaratory judgment will be dismissed.

Punitive Damages

Booker alleges that "[t]he conduct, acts, and omissions of defendants and each of them alleged herein were in part intentional and in part evinced a reckless and callous disregard for Booker's interest, were consciously malicious or negligent, and displayed a conscious or unconscious disregard for the unjustifiable substantial risk of harm to Booker." Complaint ¶ 28. Under Virginia law, punitive or exemplary damages "are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Xspedius Mgmt. Co. of Va., L.L.C. v. Stephan,* 611 S.E.2d 385, 387 (Va. 2005) (quoting *Giant of Virginia, Inc. v. Pigg,* 152 S.E.2d 271, 277 (Va. 1967)). While Booker does allege "a reckless and callous disregard" for his interests and that the actions of the defendants "were consciously malicious or negligent," neither Booker's allegations nor the actual facts of this case reach the level of egregious conduct that punitive damages are intended to address. Further, as discussed previously,

he has failed to allege any facts demonstrating that Dominion breached any duty owed to him or that he had a legitimate expectation of privacy regarding his power usage records. For these reasons, he fails to state a claim for punitive damages.

Accordingly, for all these reasons, Dominion's motion to dismiss will be granted.

**TDS Telecommunications Corporation**

TDS argues that Booker admits that his claims against TDS should be dismissed. According to Booker's counsel's statements at the March 29 hearing, that is correct. As discussed previously, Booker actually submitted a sketch order entitled "Request for Order Dismissing TDS" to the

Amelia County Circuit Court. On December 18, 2009, one of the judges of the Amelia County Circuit Court granted a revised version of the sketch order. However, because the case had been removed to this Court, the state court had no jurisdiction to grant the order. In addition, as TDS also argues, the Complaint does not state a claim against TDS upon which relief can be granted because the Complaint is barred by 18 U.S.C. § 2703(e). Section 2703(e) bars any cause of action against a telecommunications provider for providing information in response to a subpoena.

> No Cause of Action Against a Provider Disclosing Information Under This Chapter. – No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, agents or other specified persons for providing information . . . in accordance with the terms of a court order, warrant subpoena, statutory authorization or certification under this chapter.

18 U.S.C. § 2703(e). Accordingly, for all these reasons[3], TDS's motion to dismiss will be granted.

**The United States and Mark Bertsch**

As noted previously, the United States has been substituted as the sole federal defendant for the negligence and common law right to privacy claims. *See* 28 U.S.C. § 2679(d)(2). This is because the exclusive remedy for non-Constitutional claims of damage resulting from the actions of a federal employee then acting within the course and scope of his office or employment lies in an action against the United States of America under the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. § 2679(b). However, Bertsch remains the defendant in his individual capacity with respect to the Fourth Amendment right to privacy claim alleged in Count IV. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 484-86 (1994).

Fourth Amendment Right to Privacy

In Count IV, Booker alleges that Bertsch violated his Fourth Amendment right to privacy by obtaining Booker's telephone and power records pursuant to administrative subpoena. Booker

---

[3]Further, much of the analysis with regard to Dominion also applies to TDS.

also alleges that Bertsch made his records available to the public. Complaint ¶¶ 13, 20. It appears that Booker is referring to Bertsch's description of the records in an affidavit in support of a search warrant and also possibly during Thompkins' criminal trial. However, it does not appear that the substance of Booker's records was ever divulged in the affidavit or at trial. Moreover, even if the records were disclosed, officers are absolutely immune from civil liability for damages based on their testimony. *Briscoe v.LaHue*, 460 U.S. 325, 329-36 (1983). Thus, to the extent Booker's Complaint is based on Bertsch's testimony in connection with the criminal proceedings, it will be dismissed.

Although Booker does not specifically reference it, the only cognizable basis for asserting a constitutional claim against federal employees acting within the scope of their employment is under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Booker actually cites 42 U.S.C. § 1983 as the basis for his Fourth Amendment claim. However, Section 1983 applies to actions taken under the law of "any State or Territory or the District of Columbia" and not under federal law. Thus, a Section 1983 claim would fail.

Bertsch argues that the doctrine of qualified immunity shields him from liability under *Bivens* and that this claim must therefore be dismissed for failure to state a claim upon which relief may be granted. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hawlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Clearly established" for purposes of the qualified immunity analysis means that the "'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Qualified immunity is immunity from suit, not a defense to liability. *Saucier v. Katz,* 533 U.S. 194, 200 (2001). Courts must analyze the alleged violation at a "high level of

particularity" in determining whether a right is clearly established. *Knussman v. Maryland*, 272 F.3d 625, 638 (4th Cir. 2001). The Fourth Circuit has also held that a plaintiff must demonstrate that "precedent, either from the Supreme Court, the circuit in which the case arises, or a consensus of cases from other circuits, puts the officer on notice that his conduct is unconstitutional." *Altman v. City of High Point*, 330 F.3d 294, 301 (4th Cir. 2003).

Prior to a Supreme Court decision in 2009, a court was required to undertake a two-step inquiry to determine whether the official was entitled to qualified immunity. *See Saucier,* 533 U.S. at 200*; Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). First, the court would ask whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the court determined that the conduct alleged did not violate a constitutional right, then the inquiry would end. *Id*. If, however, the conduct alleged did violate a constitutional right, the second step was to ask "whether the right was clearly established" at the time of the alleged conduct. *Id*.

But in *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the Supreme Court decided that it does not matter in which order a court conducts the *Saucie*r analysis. The Court held that while it "is often appropriate" to determine, first, whether the violation of the right has been alleged, and second, whether the right was clearly established, this sequence "should no longer be regarded as mandatory." *Id.* at 818. Instead a court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

It does not matter in this case in which order the Court considers the qualified immunity issue because Booker's allegations lack any substantive merit, both at the threshold and at the clearly-established inquiry. The Fourth Amendment protects an individual from invasion only where the individual has "a legitimate expectation of privacy in the invaded place." *Rakas v.*

15

*Illinois,* 439 U.S. 128, 143 (1978). "An expectation of privacy does not give rise to Fourth Amendment protection, however, unless society is prepared to accept that expectation as objectively reasonable." *California v. Greenwood,* 486 U.S. 35, 39-40 (1988).

As discussed previously, despite his bald assertions to the contrary, Booker does not have a legitimate expectation of privacy in the business records of Dominion. *See supra*, 10-11. Nor does he have a legitimate expectation of privacy with regard to the business records of TDS. An individual does not have a legitimate expectation of privacy in the telephone numbers that are dialed on his or her telephone because "even if [he or she] did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not 'one that society is prepared to recognize as "reasonable."'" *Smith v. Maryland*, 442 U.S. 735, 743 (1979) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967). *See also United States v. Plunk*, 153 F.3d 1011, 1019-20 (9th Cir. 1998) ("individuals possess no reasonable expectation of privacy in telephone records"); *United States v. Nolan*, 423 F.2d 1031, 1044 (10th Cir. 1969) (same). Accordingly, since Booker had no legitimate expectation of privacy and, therefore, no Fourth Amendment interest, in the business records of either TDS or Dominion, on which his Fourth Amendment claim is based, this claim will be dismissed for failure to state a claim.

Tort Claims

It appears that Booker asserts two tort claims against the United States: (1) that Bertsch was negligent in collecting and disseminating his power and telephone records, and (2) that in doing so, Bertsch violated his common law right to privacy. As noted previously, the exclusive remedy for non-Constitutional claims resulting from the actions of a federal employee acting within the course and scope of his office or employment lies in an action against the United States of America under the FTCA. The right to sue the United States under the FTCA "exists wholly by consent as expressed in § 2675, 28 U.S.C., which fixes the terms and conditions on which suit may be

instituted." *Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir. 1976). The requirement that an administrative claim be filed with the appropriate agency before any civil action may be commenced in federal court "is jurisdictional and not waivable." *Id.* (citing cases); *see* 28 U.S.C. § 2675(a). Two elements must be satisfied under § 2675(a) in order for the administrative claim to have been sufficiently "presented" to the agency: (1) written notice sufficient to cause the agency to investigate, and (2) a sum-certain value on the claim. *Ahmed v. United States*, 30 F.3d 514, 517 (4th Cir. 1994).

On May 2, 2009, Booker presented a claim seeking $10 million to DEA. The claim was denied on September 16, 2009. The alleged facts set forth in the Administrative Claim relate only to the Dominion Subpoena:

> In may [sic] of 2008, special agent Mark Bertsch of the Drug Enforcement Administration faxed an adminsitrative [sic] subpena [sic] to Dominion Virginia Power for power use records regarding claimants [sic] home. The claimant was not under investigation and Dominion Virgina Power faxed claimants [sic] private records to agent Bertsch. This act by agent Bertsch violated claimants [sic] Fourth Amendment right to privacy.

Exhibit E to Government Defendants' motion to dismiss and memorandum in support. The Administrative Claim does not mention TDS, the TDS Subpoena, or that Bertsch allegedly disclosed the contents of TDS's records. By failing to even mention TDS in the Administrative Claim, Booker did not give notice sufficient to cause the DEA to investigate that portion of his current claim. Therefore, the portions of the Complaint seeking liability against the United States based on the TDS Subpoena must be dismissed for failure to exhaust administrative remedies.

In Count I, Plaintiff attempts to state a claim for negligence based on Bertsch's having faxed subpoenas to TDS and Dominion and then giving the results of those subpoenas to the court in order to effectuate a search warrant. The United States is only liable for the wrongful acts or omissions of its employees if a private person would be liable under the law of the place where the act or

17

omission occurred. 28 U.S.C. § 2674. Under Virginia law, to state a claim for negligence, a plaintiff must plead the existence of a legal duty, a violation of that duty, and proximate causation which results in injury. *Kellermann v. McDonough,* 278 Va. 478, 487 (2009); *Delk v. Columbia/HCA Healthcare Corp.,* 259 Va. 125, 132 (2000). In Count I, Booker alleges as follows:

> Defendant Mark Bertsch had a duty to Plaintiff to act with reasonable care in respecting Plaintiff's privacy by not unlawfully procuring Plaintiff's power use records, maintained by Dominion and Plaintiff's personal phone records, maintained by TDS, and particularly by not disseminating Plaintiff's private information to members of the general public.

Complaint ¶ 20. However, Bertsch did not obtain Booker's power use and telephone records "unlawfully;" rather, he obtained them pursuant to an administrative subpoena authorized by federal law. Moreover, and as discussed with respect to Booker's Fourth Amendment claim, Booker had no privacy interest in the business records of TDS or Dominion. Therefore, Bertsch owed no duty to refrain from procuring the records or testifying about their contents in court. Further, even if Bertsch did owe Booker a duty to carry out these actions with reasonable care, the Complaint fails to allege any facts that would, even if true, establish a breach of that duty. Booker has not stated a claim for negligence, and Count I will be dismissed as to the United States.

As noted previously, the United States has only waived its sovereign immunity under the FTCA for torts of its employees in instances where a private person would be liable for the tort under the law of the state where the act allegedly occurred. 28 U.S.C. § 2674. Plaintiff's claim that Bertsch invaded his common law right to privacy must be dismissed because a person would not be liable under Virginia law for the tort alleged. As discussed previously, *supra* at 8, Virginia only recognizes one tort for invasion of privacy – the misappropriation of a person's name or likeness for commercial use. Va. Code § 8.01-40(A). Booker has not alleged that the Federal Defendants misappropriated his name or likeness for commercial purposes. Thus, the United States has not

waived its sovereign immunity under the FTCA. Thus, as to the United States, this claim must be dismissed for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the reasons discussed herein, the motions to dismiss will be granted. An appropriate Order shall issue.


<u>May 7, 2010</u>  /s/
DATE  RICHARD L. WILLIAMS
  SENIOR UNITED STATES DISTRICT JUDGE